## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

IN RE:

Sheila Kaye Abramski

               Debtor,

_____/

Case No.: 19-30207
Judge: Joel D. Applebaum
Chapter: 7

## MOTION OF NATIONSTAR MORTGAGE, LLC D/B/A MR. COOPER FOR TERMINATION OF THE AUTOMATIC STAY, AND WAIVING THE PROVISIONS OF FED.R.BANKR.P.4001 (a)(3) AS TO THE PROPERTY LOCATED AT 16364 SEYMUR RD., LINDEN, MI 48451

Nationstar Mortgage, LLC d/b/a Mr. Cooper ("Movant") moves this Court, under §§ 361, 362, 363, 554 and other sections of the Bankruptcy Reform Act of 1978, as amended (the "Bankruptcy Code") and under Rules 4001, 6007 and other rules of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an Order conditioning, modifying or terminating the automatic stay imposed by 11 U.S.C. § 362 of the Bankruptcy Code, and for a waiver of the provisions of Fed.R.Bankr.P.4001(a)(3). In support of this Motion, the Movant states:

1.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

2.      The venue of this case and this Motion are proper under 28 U.S.C. §§ 1408 and 1409. Movant consents to entry of final order or judgment on this proceeding.

3.      A petition under Chapter 7 of the United States Bankruptcy Code was filed with respect to the Debtor on January 29, 2019.

4.      On January 14, 2003 the Debtor listed above obtained a loan from 1st National Financial, A Michigan Corporation, in the amount of $141,000.00, and

such loan was evidenced by a promissory note dated January 14, 2003 (the "Note"). Debtor executed a Mortgage dated January 14, 2003 (the "Security Instrument"), conveying to 1st National Financial, A Michigan Corporation, a lien on real and/or personal property (the "Collateral") owned by the Debtor, located at 16364 Seymur Rd., Linden, MI 48451. The lien is the first lien on the collateral.

5. The Note and Security Instrument were transferred as follows:

(a) To Nationstar Mortgage, LLC d/b/a Mr. Cooper on April 29, 2019. The transfer is evidenced by an Assignment of Mortgage.

6. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtain a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the Note. The Note is either made payable to Movant or has been duly endorsed.

7. As of June 12, 2019, the outstanding amount of the obligations less any partial payments or suspense balance is $148,231.26 This amount may not include accrued interest, fees, late charges, escrow shortages, or corporate advances.

8. In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $750.00 in legal fees and $181.00 in costs.

9. As of June 12, 2019, the earliest month and year of any arrearage is April 1, 2018.

10. The value of the Collateral may be $165,000.00. This valuation is based upon the Debtor's filed Bankruptcy Schedules.

11. Upon information and belief, the aggregate amount of encumbrances on the Property listed in the Schedules or otherwise known, including but not

limited to the encumbrances granted to Movant is: (i) Movant ($148,231.26); (ii) Citizens Bank ($45,000.00).

12.     Cause exists for relief from the automatic stay for the following reasons:

  a.  Pursuant to § 362(d)(1), Movant lacks adequate protection of its interest in the Property as Debtor continuously fails to make her monthly payment obligation.

  b.  Pursuant to 11 U.S.C. § 362(d)(2)(A),  Debtor has no equity in the Property and pursuant to§362(d)(2)(B) the Property is not necessary  for an effective reorganization.

  c.  Pursuant to the Debtor's Statement of Intention, it is her intent to surrender the subject property.

13.     Concurrence of Debtor for the relief sought was requested on June 14, 2019, and at the time of filing the motion, has not been received.

**WHEREFORE**, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following.

1. Relief from the stay, for all purposes allowed by law, the Note, the Mortgage, and applicable law, including but not limited to the right to foreclose allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property and any and all other collateral pledged under the Mortgage.

2. That the Order shall be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3. That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

4.  For such other and further relief as this Court deems just and proper.


Date:  June 19, 2019                    **_/s/ Cheryl D. Cook_**
                                        Potestivo & Associates, P.C.
                                        By: Cheryl D. Cook (P52128)
                                        Attorney for Movant
                                        251 Diversion St.
                                        Rochester, MI 48307
                                        (248) 853-4400
                                        ccook@potestivolaw.com

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

IN RE:

Sheila Kaye Abramski

                Debtor,

_____/

Case No.: 19-30207
Judge: Joel D. Applebaum
Chapter: 7

## NOTICE OF MOTION OF SECURED CREDITOR FOR TERMINATION OF THE AUTOMATIC STAY AND WAIVING THE PROVISIONS OF FED.R.BANKR.P.4001(a)(3)

Counsel for Nationstar Mortgage, LLC d/b/a Mr. Cooper has filed papers with the court to terminate the automatic stay and waive the provisions of Fed.R.Bankr.P.4001(a)(3).

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to enter an order to terminate the automatic stay, or if you want the court to consider your views on the Motion of Creditor For Terminating  the Automatic Stay and Waiving the Provisions of Fed.R.Bankr.P. 4001(a)(3) within fourteen (14) days, you or your attorney must:

1.    File with the court a written response or an answer pursuant to Fed.R.Civ.P.8(b), (c) and (e) explaining your position at:

United States Bankruptcy Court
211 West Fort Street
Detroit, MI 48226

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.

You must also mail a copy to:

| | | |
|---|---|---|
| Samuel D. Sweet | Cheryl Cook | Office of the U.S. Trustee |
| P.O. Box 757 | Attorney for Movant | 211 West Fort St. |
| Ortonville, MI 48462 | 251 Diversion St. | Suite 700 |
| | Rochester, MI 48307 | Detroit, MI 48226 |

     If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time, and location of the hearing.

     **If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

Date:  June 19, 2019             *_/s/ Cheryl D. Cook_*

                                   Potestivo & Associates, P.C.
                                   By: Cheryl D. Cook (P52128)
                                   Attorney for Movant
                                   251 Diversion St.
                                   Rochester, MI 48307
                                   (248) 853-4400
                                   ccook@potestivolaw.com

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

IN RE:

Sheila Kaye Abramski

               Debtor,

_____/

Case No.: 19-30207
Judge: Joel D. Applebaum
Chapter: 7

### ORDER TERMINATING THE AUTOMATIC STAY  FOR THE REAL PROPERTY LOCATED AT 16364 SEYMUR RD., LINDEN, MI 48451 AND WAIVING THE PROVISIONS OF FED.R.BANKR.P.4001(a)(3)

This matter came to be considered on the Motion for Termination from Stay (the "Motion") filed by Nationstar Mortgage, LLC d/b/a Mr. Cooper ("Movant"). Movant has alleged that good cause exists for granting the Motion and that Debtor, the Chapter 7 Trustee, and all other necessary parties were served with the Motion and with notice and opportunity to object to the Motion.  No party filed a response or otherwise appeared in opposition to the Motion.

Based on this, it appears appropriate to grant the relief requested.

**NOW THEREFORE;**

**IT IS HEREBY ORDERED** that the Motion is granted and the automatic stay imposed by 11 U.S.C. § 362 is terminated with respect to the Movant.

**IT IS FURTHER ORDERED** that the automatic stay imposed by 11 U.S.C. § 362 is terminated with respect to the enforcement of the lien as it relates to the property located at 16364 Seymur Rd., Linden, MI 48451.

**IT IS FURTHER ORDERED** that the provisions of Fed.R.Bankr.P. 4001(a)(3) are waived and shall be effective immediately upon entry of this order.

**IT IS FURTHER ORDERED** that this order shall remain in effect, notwithstanding the conversion of this bankruptcy case to a case under any other Chapter of Title 11 of the United States Bankruptcy Code.

**IT IS FURTHER ORDERED** that at Movant's sole discretion and in order to avoid foreclosure of said property, Movant may offer and provide Debtor with information regarding a potential Forbearance Agreement, Loan Modification, Refinance Agreement or other Loan Workout/Loss Mitigation options and the parties may enter into any such agreement with Debtor to the extent permitted by the law. Movant may also continue to protect its lien pursuant to the terms of security instrument, to the extent allowed by law. Movant may not enforce or threaten any personal liability against Debtor if Debtor's personal liability is discharged in this bankruptcy case or while the case remains pending.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

IN RE:

Sheila Kaye Abramski

                 Debtor,

_____/

Case No.: 19-30207
Judge: Joel D. Applebaum
Chapter: 7

## PROOF OF SERVICE

    I, Rachelle Magolan, state that on the 19th day of June, 2019 I served a copy of the Motion for Terminating the Automatic Stay, Proposed Order Terminating the Automatic Stay and Waiving the Provisions of Fed.R.Bankr.P. 4001(a)(3), Notice of Motion and Proof of Service upon:

| | |
|---|---|
| Sheila Kaye Abramski | Glen Turpening |
| 11632 Clearwater Dr. | Frego & Associates, P.L.C. |
| Fenton, MI 48430 | 23843 Joy Road |
| | Dearborn Heights, MI 48127 |
| Samuel D. Sweet | |
| P.O. Box 757 | Office of the U.S. Trustee |
| Ortonville, MI 48462 | 211 West Fort St., Ste. 700 |
| | Detroit, MI 48226 |

by placing same in a well sealed envelope, by first class mail, with the proper prepaid postage thereon and depositing same in a United States Mail receptacle in the City of Rochester, State of Michigan to Debtor, and via CM-ECF electronic filing to Debtor's Attorney, the Chapter 7 Trustee, and Office of the U.S. Trustee.

                 */s/ Rachelle Magolan*
                 Rachelle Magolan
                 Employee of Potestivo & Associates, P.C.
                 251 Diversion St.
                 Rochester, MI 48307
                 (248) 853-4400
                 rmagolan@potestivolaw.com

LOAN NO. Redacted

16364 Seymur Linden MI 48451

Redacted

# NOTE

Redacted

JANUARY 14 , 2003              **BRIGHTON**              **MI**
[Date]                              [City]              [State]

Redacted

**16364 SEYMUR RD**
**LINDEN, MI 48451**
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $      141,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is
**1ST NATIONAL FINANCIAL,**
**A MICHIGAN CORPORATION**                                                      . I will make
all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of     6.000 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  1ST      day of each month beginning on **MARCH 1**      , 2003 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on **FEBRUARY 1**     , 2033 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
1475 W BIG BEAVER STE 300 TROY MICHIGAN 48084

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $      845.37 .

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then:  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

MULTISTATE  FIXED  RATE  NOTE  -  Single  Family  -  Fannie  Mae/Freddie  Mac  UNIFORM  INSTRUMENT  FORM  3200  1/01

FNMA3200 (10/00)                    Page 1 of 3            Initial _____    Initial _____

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

    **(A) Late Charges for Overdue Payments**

    If the Note Holder has not received the full amount of any monthly payment by the end of    **15**   calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be  **5.000**   % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

    **(B) Default**

    If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    **(C) Notice of Default**

    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

    **(D) No Waiver By Note Holder**

    Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    **(E) Payment of Note Holder's Costs and Expenses**

    If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

    Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

    Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

    I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

    This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

        If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

        If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE  FIXED  RATE  NOTE - Single  Family - Fannie  Mae/Freddie  Mac  UNIFORM  INSTRUMENT  FORM  3200  1/01

FNMA3200 (10/00)                            Page 2 of 3            Initial _MA_      Initial _SA_

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

MICHAEL H ABRAMSKI
_____(Seal)
                                         -Borrower
              Redacted
Social Security Number_____

SHEILA ABRAMSKI
_____(Seal)
                                         -Borrower
              Redacted
              Redacted
Social Security Numbe                            _

_____(Seal)
                                         -Borrower

Social Security Number_____


_____(Seal)
                                         -Borrower

Social Security Number_____

*[Sign Original Only]*

Pay to the order of   FLAGSTAR BANK, FSB
without recourse
on this 14th day of Jan. 2003

Linda Juncevic-Closing Coordinator
1st National Financial

Redacted                 Redacted

16364 Seymur  Linden  MI  48451

MULTISTATE  FIXED  RATE  NOTE  -  Single  Family  -  Fannie  Mae/Freddie  Mac  UNIFORM  INSTRUMENT  FORM  3200  1/01

FNMA3200 (10/00)                    Page 3 of 3



PAY TO THE ORDER OF
WITHOUT RECOURSE
FLAGSTAR BANK, FSB

BY:

BY:
JOHN GREY, SENIOR FIRST VICE PRESIDENT

Redacted

Redacted

Redacted
Instr. Redacted      01/27/2003
P.1 of 14    :$35.00    8:27PM
Melvin Phillip McGraw   Redacted
Genesee County Register

Prepared by and When Recorded Return To:
LINDA JUNCEVIC
1ST NATIONAL FINANCIAL
1475 W. BIG BEAVER, SUITE 300
TROY, MI 48084

--------------------------------[Space Above This Line For Recording Data]--------------------------------

LOAN NO.

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    JANUARY 14, 2003    , together with all Riders to this document.

(B) "Borrower" is
MICHAEL H ABRAMSKI AND SHEILA ABRAMSKI, HUSBAND AND WIFE

Borrower's address is:    16364 SEYMUR RD
                          LINDEN, MI   48451
Borrower is the mortgagor under this Security Instrument.

(C) "Lender" is
1ST NATIONAL FINANCIAL
Lender is a    MICHIGAN CORPORATION                          organized and existing under the laws of
MICHIGAN                          . Lender's address is
1475 W. BIG BEAVER, SUITE 300
TROY, MI 48084
Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated    JANUARY 14, 2003    .
The Note states that Borrower owes Lender
ONE HUNDRED FOURTY-ONE THOUSAND AND 00/100
Dollars (U.S. $    141,000.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    FEBRUARY 1, 2033    .

MICHIGAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3023 (01/01)
Page 1 of 13

Redacted

Redacted

Redacted
Instr                              01/27/2003
P:2 of 14     F:$35.00        8:27AM
Melvin Phillip McCree  Redacted
Genesee County Register   ML 1ST NATI

(E) "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "**Riders**" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Planned Unit Development Rider |
|---|---|---|
| ☐ 1-4 Family Rider | ☐ Second Home Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☒ Other(s) [specify]   **LEGAL** | |

(H) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "**Community Association Dues, Fees and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "**Escrow Items**" mean those items that are described in Section 3.

(L) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the

MICHIGAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3023 (01/01)
Page 2 of 13

Redacted

Redacted
Instr:_____ 01/27/2003
P:3 of 14    F:$35.00    8:27AM
Melvin Phillip McCree  Redacted
Genesee County Register    ML1ST NATI

COUNTY
of    GENESEE                                        [Type of Recording Jurisdiction]
      [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION

TAX ID#  Redacted

which currently has the address of    **16364 SEYMUR RD, LINDEN**
                                         [Street]
Michigan                                ("Property Address"):          [City]
           48451
         [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment(s) or partial payment(s) if the payment(s) or partial payments are insufficient to bring the Loan current. Lender may accept any payment(s) or partial payment(s) insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment(s) or partial payments in

MICHIGAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT            Form 3023 (01/01)
Page 3 of 13

Redacted

Inst: ****Redacted                01/27/2003
P:4 of 14    F:$36.00           8:27AM
Melvin Phillip McCree  Redacted
Genesee County Register   ML1ST NATI

the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment(s) to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or

MICHIGAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     Form 3023 (01/01)
Page 4 of 13

Redacted

Instr.~~~~~~~~~~~~~~~~~~~~  01/27/2003
P.5 of 14      F:$35.00      8:27AM
Melvin Phillip McCree  Redacted
Genesee County Register   ML1ST NATI

entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower

MICHIGAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 5 of 13

Form 3023 (01/01)

Redacted

Redacted
inc:c:                                      01/27/2003
P:6 of 14      F:$35.00      6:27AM
Melvin Phillip McCrea   Redacted
Genesee County Register   mi:ibi MATI

secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable

MICHIGAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 6 of 13                                              Form 3023 (01/01)

Redacted

Inst.             01/27/2003
P:7 of 14     F:$35.00    R:27PM
Melvin Phillip McCree   Redacted
Genesee County Register   ML1ST NATI

cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorney's fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur

MICHIGAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 7 of 13

Form 3023 (01/01)

Redacted

Instr: Redacted
P:8 of 14        F:$35.00      01/27/2003
Melvin Phillip McCree  Redacted  8:270AM
Genesee County Register   ML1ST NATI

if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond

MICHIGAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 8 of 13                                     Form 3023 (01/01)

Redacted

Redacted

P:9 of 16    F:$96.00    01/27/2003
Melvin Phillip McCree    8.27GM
Genesee County Register    ML1ST NATI    Redacted

to Lender within 30 days after the date the notice is given. Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be

19-30207-jda    Doc 25    Filed 06/19/19    Entered 06/19/19 16:37:07    Page 22 of 41

Redacted

in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

   16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

   As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

   17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

   18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

   19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an

MICHIGAN - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                    Form 3023 (01/01)
Page 10 of 13

Redacted

Redacted                                    01/27/2003
Instr:                    F:$35.00          8:27AM
P:11 of 14                Redacted
Melvin Phillip McCree
Genesee County Register         ML1ST MAIL

institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer(s) and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

MICHIGAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                  Form 3023 (01/01)
Page 11 of 13

Redacted

Redacted

Redacted

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Section 15. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____(Seal)
MICHAEL H ABRAMSKI                      - Borrower
Social Security Number _Redacted_ _____

_____(Seal)
SHEILA ABRAMSKI                         - Borrower
Social Security Number _Redacted_ _____

_____(Seal)
                                        - Borrower
Social Security Number _____

_____(Seal)
                                        - Borrower
Social Security Number _____

MICHIGAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3023 (01/01)
Page 12 of 13

Redacted

------------------------------[Space Below This Line For Acknowledgment]------------------------------

STATE OF _Michigan_                )
                                   ) SS:
COUNTY OF _Livingston_             )

The foregoing instrument was acknowledged before me, a Notary Public, on ___1 - 14 - 03___

                                                                      Date

by:    MICHAEL H ABRAMSKI AND SHEILA ABRAMSKI, HUSBAND AND WIFE

                              Person(s) Acknowledging

In WITNESS WHEREOF, I have hereunto set my hand and official seal.

My Commission expires: _7/14/07_                    _____

                                                              Notary Public

PHILLIP GARCIA
NOTARY PUBLIC LIVINGSTON CO., MI
MY COMMISSION EXPIRES Jul 14, 2007

MICHIGAN - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3023 (01/01)
Page 13 of 13

# LEGAL DESCRIPTION <sup>Redacted</sup>

Redacted

Redacted

01/27/2003
P:14 of 14    F:$35.00    <sup>Redacted</sup>  8:27AM
Melvin Phillip McCree
Genesee County Register    ML.1ST NATI

**Order Number:** <sup>Redacted</sup>

Sidwell Number:<sup>Redacted</sup>

Land situated in the Township of Argentine, County of Genesee, State of Michigan, described as:

Part of the Northeast ¼ of the Southeast ¼ of Section 34, Town 5 North, Range 5 East, Argentine Township, Genesee County, Michigan described as: Beginning at a point 56 rods South of the Southwest corner of the plat of Argentine Village, according to the recorded plat thereof; running thence South 7 rods to a point; thence East to the centerline of Seymour Road; thence North 7 rods; thence West to the point of beginning.

**Commonly known as:** 16364 S. Seymour Rd.

## STEWART TITLE
### GUARANTY COMPANY

Flagstar

Redacted

```
instr: Redacted                    01/27/2003
P:1 of 3        F:$13.00          8:09AM
Melvin Phillip McCree  Redacted
Genesee County Register    ni
```

## ASSIGNMENT OF MORTGAGE
### By: Corporation of Partnership

**Loan No:** Redacted

For valuable consideration, 1st National Financial Corporation

A Michigan Corporation, under the laws of

Michigan, Assignor (whether one or more), hereby sells, assigns
and transfers to:

**FLAGSTAR BANK FSB**
**5151 CORPORATE DRIVE**
**TROY, MI 48098,** Assignee (whether one or more), the
Assignor's Interest in the Mortgage dated JANUARY 14TH 2003 Executed by

MICHEAL H AND SHEILA ABRAMSKI, HUSBAND AND
WIFE          Redacted

As mortgagor, to 1ST **NATIONAL FINANCIAL CORPORATION**

As mortgagee, and filed for record      1-14-03          _____, ____,
As Document Number ___Redacted___          ____
(Or in Book_____ of _____
Page _____), in the Office of the (County Recorder)
(Register of Titles) of GENESEE, COUNTY, **MICHIGAN**
Described as follows:

### SEE ATTACHED FOR LEGAL DESCRIPTION

**TAX ID #:** Redacted

**MORE COMMONLY KNOW AS:**
**16364 SEYMUR ROAD**
**LINDEN, MI 48451**
### JANUARY 14TH 2003

Together with the note or notes therein described of referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Real Estate Mortgage.

1st National Financial Co.

By: _____
**NICOLE R HANSCHU-CLOSER**

Redacted

STATE OF MICHIGAN }
} ss.
COUNTY OF GENESEE Macomb }

Redacted
Instr ...... 01/27/2003
P.2 of 3    F:$13.00    a.790M
Melvin Phillip McCree    Redacted
Genesee County Register

On this 14th day of Jan 2008 , before me, a Notary Public within and for said County, personally appeared Nicole Hanschu Closser

1st National Financial Cup.

Personally known to me to be the duly authorized agent of the ASSIGNOR and personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that as such duly authorized agent of the ASSIGNOR as a free and voluntary act, and as a free and voluntary act and assignment of said ASSIGNOR, for the uses and purposes therein set forth.

Signature of Person Taking Acknowledgment

My Commission Expires: Linda Juncevic

LINDA JUNCEVIC
Notary Public, Macomb County, MI
My Commission Expires 04/20/2003

Prepared by and
Return To:
Jennifer lee
FNFC
1495 W. Big Beaver Ste 300
Troy, MI 48084
1 13.00

MTGASSIGN

# LEGAL DESCRIPTION

Redacted

**Order Number:** Redacted

**Sidwell Number:** Redacted

Instr Redacted                          01/27/2003
P.3 of 3          F:$13.00          8:29AM
Melvin Phillip McCree    Redacted
Genesee County Register    mL

Land situated in the Township of Argentine, County of Genesee, State of Michigan, described as:

Part of the Northeast ¼ of the Southeast ¼ of Section 34, Town 5 North, Range 5 East, Argentine Township, Genesee County, Michigan described as:  Beginning at a point 56 rods South of the Southwest corner of the plat of Argentine Village, according to the recorded plat thereof; running thence South 7 rods to a point; thence East to the centerline of Seymour Road; thence North 7 rods; thence West to the point of beginning.

**Commonly known as:**  16364 S. Seymour Rd.

**STEWART TITLE**
GUARANTY COMPANY

Redacted

```
......Redacted            ..........
Instr                       11/18/2003
P.1 of 1      P:$14.00 Redacted   8:41AM
Melvin Phillip McCree
Genesee County Register    Env
```

# ASSIGNMENT of MORTGAGE

**PREPARED BY: SMI**
**RECORDING REQUESTED BY**
**/AFTER RECORDING RETURN TO:**

Stewart Mortgage Information
Attn. Sherry Doza
P.O. Box 540817
Houston, Texas 77254-0817
Tel. (800) 795-5263

Pool: 0        Index: Redacted
Loan Number: ‾ ‾ ‾ ‾ ‾ ‾ ‾
Other Loan Number: Redacted
Investor #: Redacted      edacted          Redacted

**STATE OF MICHIGAN**

KNOW ALL MEN BY THESE PRESENTS:

**COUNTY OF GENESEE**

That FLAGSTAR BANK, FSB ('Assignor'), acting herein by and through a duly authorized officer, the owner and holder of one certain promissory note executed by MICHAEL H. ABRAMSKI AND SHEILA ABRAMSKI ('Borrower(s)') secured by a Mortgage therewith executed by Borrower(s) for the benefit of the holder of the said note, which Mortgage was recorded on the lot(s), or parcel(s) of land described therein situated and recorded in the County of Genesee, State of Michigan:

Recording Ref:  Instrument/Document No. Redacted          Date of Mortgage 1/14/2003

Loan Amount:  $141,000.00

Property Address:  16364 SEYMUR RD, LINDEN, MI 48451

For and in consideration of the sum of Ten and No/100 dollars ($10.00), and other good valuable and sufficient consideration paid, the receipt of which is hereby acknowledged, does hereby transfer and assign, set over and deliver unto MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (Assignee), all beneficial interest in and to title to said Mortgage, together with the note and all other liens against said property securing the payment thereof, and all title held by the undersigned in and to said land.

TO HAVE AND TO HOLD unto said Assignee said above described Mortgage and note, together with all and singular the liens, rights, equities, title and estate in said real estate therein described securing the payment thereof, or otherwise.

Effective the 1st day of September A.D. 2003 and executed this the 12th day of September A.D. 2003.

FLAGSTAR BANK, FSB

Witness: _Odelia Bren_

ODELIA BERGERON

By: _____

SHERRY DOZA
VICE PRESIDENT

Witness: _____

CONSTANCE BERNARD

THE STATE OF TEXAS

COUNTY OF HARRIS

On this the 12th day of September A.D. 2003, before me, a Notary Public, appeared SHERRY DOZA to me personally known, who being by me duly sworn, did say that (s)he is the VICE PRESIDENT of FLAGSTAR BANK, FSB, and that said instrument was signed on behalf of said corporation by authority of its Board of Directors, and said SHERRY DOZA acknowledged said instrument to be the free act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

Assignee's Address:
P.O. BOX 2026
FLINT, MICHIGAN 48501-2026

CHERYL SWINSINSKI
NOTARY PUBLIC
STATE OF TEXAS
Comm. Exp. 06-11-2005

Assignor's Address:
5151 CORPORATE DRIVE
TROY, MI 48098

Redacted                                    Redacted

Redacted

GEN. CO. REGISTER OF DEEDS
RECEIVED

2011 APR 12 P 12: 01

Redacted
04/12/2011
P:1 of 1   F:$14.00   2:16PM
Rosalyn Bogardus
Genesee County Register   TC

Redacted

## ASSIGNMENT OF MORTGAGE

Abramski, Michael H                                      T&T #Redacted

Mortgage Electronic Registration Systems, Inc., 1818 Library Street, Suite 300, Reston, VA 20190, for value received, assigns and transfers to: **Chase Home Finance LLC**, 800 Brooksedge Blvd, Westerville, OH 43081-2822, all its right, title and interest in and to a certain real estate mortgage made by Michael H Abramski and Sheila Abramski, Husband and Wife, original mortgagor(s), to 1st National Financial, Mortgagee, dated January 14, 2003, and recorded on January 27, 2003 in instrument Redacted          . in Genesee County records, Michigan.

Dated: 4/6/11
In the presence of:                              Signed: Tracy Charlton

                                                 Mortgage Electronic Registration Systems, Inc.

Dan Hooley
Deborah A. Miller                                By _____ **Tracy Charlton** _____

                                                 Its _____ Assistant Secretary _____

STATE OF ____ **Ohio** ____ )
                             )SS.
COUNTY OF ____ **Franklin** ____ )
This instrument was acknowledged before me in ____ Franklin County, State of ____ **Ohio**, on this 6 day of ____ April 2011 2010, by ____ **Tracy Charlton** ____ its ____ Assistant Secretary ____ of Mortgage Electronic Registration Systems, Inc., for the corporation

JULIE WAGNER                                     Julie Wagner ____, Notary public
Notary Public, State of Ohio                     State of ____ **Ohio**, County of ____ **Franklin**
My Comm. Expires June 15, 2015                   My commission expires _____
                                                 Acting in the County of ____ **Franklin**

| When Recorded Return To: | Drafted by: Marcy J. Ford |
|---|---|
| Trott & Trott, P.C. | Trott & Trott, P.C. |
| 31440 Northwestern Highway, Suite 200 | 31440 Northwestern Highway, Suite 200 |
| Farmington Hills, MI 48334-2525 | Farmington Hills, MI 48334-2525 |

Township of Argentine:
Legal Description:
Part of the Northeast 1/4 of the Southeast 1/4 of Section 34, Town 5 North, Range 5 East, Argentine Township, Genesee County, Michigan described as: Beginning at a point 56 rods South of the Southwest corner of the Plat of Argentine Village, according to the recorded plat thereof; running thence South 7 rods to a point; thence East to centerline of Seymour Road; thence North 7 rods; thence West to the point of beginning

Tax Parcel No. Redacted

Property Address
16364 Seymour Rd
Linden, MI 48451-9645

1 VAULT

Redacted

Redacted
12/26/2013
Pages:1 F:$14.00 3:58 PM
John J. Gleason   Redacted
Genesee County Register ENV

Redacted



2013 DEC 11  P 1: 12

MERS TEL: Redacted   MIN: Redacted

Redacted

## MICHIGAN ASSIGNMENT OF MORTGAGE
Redacted

For Value Received, **Mortgage Electronic Registration Systems, Inc ("MERS")** , as nominee for 1ST NATIONAL FINANCIAL , its successors and assigns, (herein "Assignor") with an address at 1475 W. BIG BEAVER, SUITE, TROY, MI, 48084 does hereby assign and transfer unto JPMorgan Chase Bank, National Association , its successors and assigns, (herein "Assignee"), whose address is 700 Kansas Lane, MC 8000, Monroe, LA, 71203 , all its right, title and interest in and to a certain Mortgage dated 01/14/2003 and recorded on 01/27/2003 , made and executed by MICHAEL H ABRAMSKI AND SHELIA ABRAMSKI, HUSBAND AND WIFE , upon the following described property situated in Genesee County, State of Michigan:

Property Address: 16364 SEYMUR RD, LINDEN,, MI, 48451

such Mortgage having been given to secure payment of One Hundred Forty One Thousand dollars and Zero cents ( $141,000.00 ), which Mortgage is of record in Book, Volume, or Liber No. NA at Page NA No. Redacted in the Office of the Register of Deeds of Genesee County, State of Michigan, and all rights accrued or to accrue under such Mortgage.
TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.
IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on 11/06/2013 .

Mortgage Electronic Registration Systems, Inc ("MERS")

By: _Angela Bowden_
Angela Bowden
Assistant Secretary
**WITNESSES:**

Witness: _Petrick Chem_

Witness: _Adriane Matthews_

STATE OF LA , Ouachita Parish

On this day, 11/06/2013 , before me, Y.K. Wilson  a Notary Public, appeared Angela Bowden , to me personally known, who, being by me duly sworn did say that he/she is the Assistant Secretary  of Mortgage Electronic Registration Systems, Inc ("MERS")  and that the seal affixed to said instrument is the seal of said national association and that the instrument was signed on behalf of the national association by authority of its Board of Directors or Trustees and that Angela Bowden  acknowledged the instrument to be the free act and deed of the national association.

Notary Public: Y.K. Wilson
Acting in the County of Ouachita Parish

Y. K. WILSON
OUACHITA PARISH, LOUISIANA
LIFETIME COMMISSION
NOTARY ID# 064399

After recording please return to:
CT LIEN SOLUTIONS
PO BOX 29071
GLENDALE , CA 91209-9071
Phone #: Redacted

This instrument was prepared by:
ANGELA BOWDEN
ANGELA BOWDEN
780 KANSAS LANE 2ND FLOOR
Monroe , LA 71203

Redacted

Redacted

Redacted

```
P:2 P:$37.00
Received: 6/3/2015 8:48 AM
Recorded: 6/5/2015 10:32 AM
John J. Gleason  Redacted
Genesee County Register BMV
```

# MICHIGAN ASSIGNMENT OF MORTGAGE

Redacted

For Value Received, JPMorgan Chase Bank, N.A., S/B/M Chase Home Finance LLC, the undersigned holder of a Mortgage (herein "Assignor") does hereby grant, sell, assign, transfer and convey, unto FEDERAL NATIONAL MORTGAGE ASSOCIATION, ITS SUCCESSORS OR ASSIGNS, (herein "Assignee"), whose address is 14221 Dallas Parkway, Suite 100, Dallas, TX 75254, all its right, title and interest in and to a certain Mortgage dated January 14, 2003 and recorded on January 27, 2003, made and executed by MICHAEL H ABRAMSKI AND SHEILA ABRAMSKI, to and in favor of 1ST NATIONAL FINANCIAL, upon the following described property situated in GENESEE County, State of Michigan:
Property Address: 16364 SEYMUR RD, LINDEN, MI 48451

LAND SITUATED IN THE TOWNSHIP OF ARGENTINE, COUNTY OF GENESEE, STATE OF MICHIGAN, DESCRIBED AS:

PART OF THE NORTHEAST 1/4 OF THE SOUTHEAST 1/4 OF SECTION 34, TOWN 5 NORTH, RANGE 5 EAST, ARGENTINE TOWNSHIP, GENESEE COUNTY, MICHIGAN DESCRIBED AS: BEGINNING AT A POINT 56 RODS SOUTH OF THE SOUTHWEST CORNER OF THE PLAT OF ARGENTINE VILLAGE, ACCORDING TO THE RECORDED PLAT THEREOF; RUNNING THENCE SOUTH 7 RODS TO A POINT; THENCE EAST TO THE CENTERLINE OF SEYMOUR ROAD; THENCE NORTH 7 RODS; THENCE WEST TO THE POINT OF BEGINNING.

COMMONLY KNOWN AS 16364 S. SEYMOUR RD.

such Mortgage having been given to secure payment of One Hundred Forty One Thousand and 00/100ths ($141,000.00), which Mortgage is of record in Book, Volume, or Liber No. N/A, at Page N/A (or as No. Redacted ) in the Office of the Register of Deeds of GENESEE County, State of Michigan.

TO HAVE AND TO HOLD, the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telepho Redacted is responsible for receiving payments.

Michigan Assignment of Mortgage
JPMorgan Chase Bank N.A. Project W3604   Redacted   Page
Redacted                                    Redacted

Redacted

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on 2/20/15.

Assignor:
JPMorgan Chase Bank, N.A., S/B/M Chase Home Finance LLC

By: _____
        _John R. Seal_

Its:    **VICE PRESIDENT**

ACKNOWLEDGMENT

State of Louisiana

Parish of Ouachita

On this 20th day of Feb 2015 before me appeared _John R. Seal_, to me personally known, who, being by me duly sworn (or affirmed) did say that he/she is the **VICE PRESIDENT**, of JPMorgan Chase Bank, N.A., S/B/M Chase Home Finance LLC, and that the seal affixed to said instrument is the corporate seal of said entity and that the instrument was signed and sealed on behalf of the said entity by authority of its board of directors and that _John R. Seal_ acknowledged the instrument to be the free act and deed of the said entity.

_J.K. Wilson_
*Notary Public #064809*
*Ouachita Parish, LA*
*Lifetime Commission*

Signature  _J. K. Wilson_

Printed Name of Notary Public

Notary Public, State of _LA_, County of **Parish of Ouachita**

Acting in the County of **Parish of Ouachita**

(Notary Stamp)

My Commission Expires: *Lifetime*

*[Space Below this Line for Recording & Prepared By Information]*

After recording please return to:
PEIRSONPATTERSON, LLP
ATTN: RECORDING DEPT.
13750 OMEGA ROAD
DALLAS, TX 75244-4505

Prepared by:
PEIRSONPATTERSON, LLP
WILLIAM H. PEIRSON
13750 OMEGA ROAD
DALLAS, TX 75244-4505

Michigan Assignment of Mortgage

Redacted

RECEIVED
REGISTER OF DEEDS
GENESEE, MI

2019 APR 30 PM 4:56

Redacted

**Pages: 1**
**Recorded: 05/01/2019 09:05 AM**
**Fees: $30.00 Rcpt:** Redacted
John J. Gleason, Register of Deeds
Genesee County, MI RFILING

Redacted

## CORPORATE ASSIGNMENT OF MORTGAGE

Genesee, Michigan
**SELLER'S SERVICING #:** Redacted          "ABRAMSKI"
Date of Assignment: April 29th, 2019
Assignor: FEDERAL NATIONAL MORTGAGE ASSOCIATION, BY NATIONSTAR MORTGAGE LLC, ITS
ATTORNEY-IN-FACT at 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019
Assignee: NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER at 8950 CYPRESS WATERS BLVD.,
COPPELL, TX 75019

Executed By: MICHAEL H ABRAMSKI AND SHEILA ABRAMSKI, HUSBAND AND WIFE To: 1ST
NATIONAL FINANCIAL
Date of Mortgage: 01/14/2003 Recorded: 01/27/2003 as Instrument No.: Redacted          In the
County of Genesee, State of Michigan.

Property Address: 16364 SEYMUR RD, LINDEN, MI 48451

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $141,000.00 with interest, secured
thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and
the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the
Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever,
subject to the terms contained in said Mortgage.

   FEDERAL NATIONAL MORTGAGE ASSOCIATION, BY NATIONSTAR MORTGAGE LLC, ITS
ATTORNEY-IN-FACT
On April 29th, 2019

By:_____
MOHAMED HAMEED, Vice-President

STATE OF Texas
COUNTY OF Dallas

On April 29th, 2019, before me, TIM JACKSON, a Notary Public in and for Dallas in the State of Texas,
personally appeared MOHAMED HAMEED, Vice-President of FEDERAL NATIONAL MORTGAGE
ASSOCIATION, BY NATIONSTAR MORTGAGE LLC, ITS ATTORNEY-IN-FACT, personally known to me
to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature
on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

WITNESS my hand and official seal,

_____
TIM JACKSON
Notary Expires: 12/03/2019  # Redacted

```
┌─────────────────────────────┐
│          TIM JACKSON         │
│  Notary Public, State of Texas │
│  Comm. Expires 12-03-2019    │
│     Notary ID  Redacted      │
└─────────────────────────────┘
```

(This area for notarial seal)

**Prepared By: Bernardo Hernandez, NATIONSTAR MORTGAGE DBA MR. COOPER 8950 CYPRESS**
**WATERS BLVD, COPPELL, TX 75019 1-888-480-2432**
 When Recorded Return To: DOCUMENT ADMINISTRATION, NATIONSTAR MORTGAGE DBA MR.
COOPER 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019

Redacted

Redacted

## LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 20th day of April, 2015, between ABRAMSKI, MIKE and ABRAMSKI, SHEILA ("Borrower") and Seterus, Inc. ("Servicer") Loan Servicer for Federal National Mortgage Association ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated January 14, 2003 and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at

16364 SEYMOUR RD, LINDEN MI 48451-9645

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of June 01, 2015, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $137,075.32, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.250%, from May 01, 2015. Borrower promises to make monthly payments of principal and interest of U.S. $594.39, beginning on the 1st day of June, 2015, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 4.250% will remain in effect until principal and interest are paid in full. If on May 01, 2055 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. In addition to the regularly scheduled payments that Borrower is required to pay under the Modification Agreement, Borrower agrees to pay Servicer an escrow payment in the amount of $290.04 for deposit into an escrow account for necessary payments to be made by Servicer, including but not limited to, payments for property taxes and insurance. As permitted by the Real Estate Settlement Procedures Act and other applicable law, Servicer may adjust the amount of the Escrow Payment. After notice of such adjustment, Borrower shall pay the adjusted Escrow Payment.
   (a) Each Escrow Payment shall be due on the same day(s) of the month as the regularly scheduled payments due under the Modification, commencing June 01, 2015.
   (b) In the event Escrow Payments are not made and Servicer advances its own funds to make payments that should have been paid from Borrower's escrow account, such amounts will be added to Borrower's loan obligation under the Note.
   (c) Any failure to make an Escrow Payment when due shall be deemed to be a default under the Note and Modification Agreement and upon Borrower's failure to pay the Escrow Payment, Servicer may exercise its rights under the Note and Modification Agreement.

ABRAMSKI, MIKE Redacted
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179  1.01 (rev. 06.12)    Page 1 of 5

(d)  Unless an agreement is made in writing or applicable law requires interest to be paid on the escrow account payments held by Servicer, Servicer shall not be required to pay any interest or earnings on the payments held.

4.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:
    (a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and
    (b)  all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6.  Borrower understands and agrees that:
    (a)  If Borrower has failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will be null and void.
    (b)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.
    (c)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other

persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e) All administration and processing costs incurred by Servicer in connection with this Agreement, such as required notary fees, recordation fees, title costs and property valuation fees, shall be paid by the Servicer, unless otherwise stipulated.

(f) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(g) To execute other documents as may be reasonably necessary to correct an error (including but not limited to any inaccuracy, mistake or omission) if an error is detected after execution of this Agreement. In the event an error is detected, a corrected Agreement will be provided to Borrower, and this Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrected Agreement, the terms of the original Note and Security Instrument shall continue in full force and effect and such terms will not be modified by this Agreement.

7. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act

ABRAMSKI, MIKE    Redacted

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179  1.01 (rev. 06.12)    Page 3 of 5

("RESPA"), and (b) not to exceed the maximum amount a Lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

8. Any and all attorneys fees and legal costs incurred by Borrower or its representatives, with respect to this loan, will be the sole responsibility of the Borrower.

9. In the event of future default, Borrower authorizes Lender and Lender's successors and assigns, to share certain Borrower public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Borrower's account balances and activity, with an authorized third party, which may include, but is not limited to, a counseling agency, state or local Housing Finance Agency, or similar entity that is assisting Borrower in connection with obtaining a foreclosure prevention alternative, including the Trial Period Plan to modify Borrower's loan ("Authorized Third Party").

Borrower understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Borrower's loan), disclosing such personal information and the terms of any relief or foreclosure prevention alternative, including the terms of the Trial Period Plan to modify Borrower's loan, to any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with the loan or any other mortgage loan secured by the Property on which Borrower is obligated.

ABRAMSKI, MIKE Redacted
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179  1.01 (rev. 06.12)    Page 4 of 5

Borrower consents to being contacted by Fannie Mae, Lender, or Authorized Third Party concerning mortgage assistance relating to Borrower's loan including the Trial Period Plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Authorized Third Party.

By checking this box, Borrower also consents to being contacted by text messaging. ☐

In Witness Whereof, the Servicer and I have executed this Agreement.

heather Ashe

JUN 11 2015

_____
Seterus, Inc.   Authorized Signer

Date

_____
ABRAMSKI, MIKE

5/26/15
Date

_____
ABRAMSKI, SHEILA

5·26·15
Date

ABRAMSKI, MIKE     Redacted
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT     Form 3179  1.01 (rev. 06.12)     Page 5 of 5